Florence Brummer from Rosenquist & Associates from Phoenix, Arizona, on behalf of Yaha Kenyatta, formerly known as John Ray King. I have reserved two minutes for rebuttal. This is a case that involves whether Mr. Kenyatta's life sentence amounts to cruel and unusual punishment in violation of the Eighth Amendment. Yes, it does. And how we get to that decision is that the nature of the crime and the gravity of the sentence are grossly disproportionate. And to analyze that, we have a three-factor test. Has there ever been a case where it has been held, a court has held a sentence disproportionate where it has involved physical injury to a victim? That involves physical injury? Well, I think this case is probably... I'm asking you about other cases. Other cases... Has there been a case where a court has held that there was a violation of the Eighth Amendment as being an excessive sentence where there was physical injury to the victim, to some victim? Well, I think we can look at the Ramirez case, which not in the last crime that he committed where he received the life sentence under the three-strikes rule, but in his previous crimes, he caused physical injury. Let me narrow my question then. Okay. I'm talking about where the crime of conviction, not the crime that creates enhancements, but the crime of conviction involves harm to an individual. The way it works is we look at the punishment for the crime for which he is now convicted, the last crime. And sometimes the crime is like check writing or something like that. We say, well, it's highly non-aggressive, and it's really cruel to put somebody in jail for their entire life for something that doesn't involve violence. But in this case, there was clearly violence involved, and there was injury. It was not a huge injury, but it could have been much worse. There were two kinds of injury. There was the one officer who was run into by the truck. Now, he didn't sustain permanent damage, but it's not a good thing to be run into by a truck. And then there was the other officer whose hand somehow got caught in the door, depending on who you believe, whether it was being held by Mr. Kenyatta or whether it was Mr. Kenyatta, even as the man's hand is in the door, keeps driving. Could have broken the arm off. And then, in fact, there was a shooting. One of the officers shot and hit the tip of the fingernail that easily could have resulted in serious injury to the hand and, in fact, hit the finger, the fingernail, right? Right. So I'm having a little difficulty, given those facts, just viewing this as being such a light crime. I see exactly what you're saying. And this case, it's different than any other case that's out there, but it doesn't rise to the level of the Kokio case, and I'm not sure if I'm saying it right, COCIO, where it's the same exact statute that the defendant is convicted of, but he killed somebody while he was drunk driving. This case is much different. And you need to look, all of these cases, they say when you look at the gross disproportionality, it's very fact-specific and you have to look at the facts of it. And in the facts, Kenyatta, according to everybody, no matter who you believe, doesn't get above 10 miles an hour. No one is hurt except for the officer who gets shot by the other officer. And, in fact, the only one who really gets hurt is Kenyatta, who gets shot by the officer. So we have a case where you look at the facts itself and it doesn't rise to that level, like in the Kokio case, where you have somebody who's drunk driving and knows if you drive drunk, this is what's going to happen. The facts are very... Well, I mean, lots of people drive drunk and get home safely. And, you know, the lucky one doesn't mean they didn't commit a crime. Right. But they did commit a crime, but they got away with it, or they get stopped before they hurt somebody. And, you know, so nobody, in fact, gets hurt. This just sort of falls in the class of activities that is highly dangerous. The reason we treat drunk driving as so serious is because we know people do get killed when people drive drunk. It doesn't happen every time, but it does happen often enough where we consider it a danger. The same way, running into somebody with a truck, even at 10 miles an hour, and there's a dispute about how fast the truck was going. Even at 10 miles an hour can certainly cause serious bodily injury, a hit to the head, a possible concussion, possible death. And hitting the accelerator while you've got somebody's arm stuck in your window is a good way of breaking somebody's arm. And then not stopping when the police tell you to stop and causing them to pull out a gun and shoot you is a good way of getting yourself killed, but it's also a good way of getting somebody else injured. That's true. I agree with you on all of that, but he received a life sentence for this. And when you look at his previous crimes, that's where you really have the gross disproportionality. This was a man who served 11 months total. He had two previous felonies, but they were class six, which in Arizona is the least serious felony that you can get. They were for theft and possession of marijuana. He didn't even have the types of felonies in Arizona where he could be convicted under the three strikes rule. He was convicted under this statute that was only in for a brief period of time, which was if you were on probation and committed a felony, you'd get a life sentence. And that's where the problem is. If this statute didn't exist, he would have received a sentence of between 10 and 20 years. This statute was withdrawn by the legislature, and now the punishment is the presumptive sentence plus or minus 25 percent to mitigate or aggravate the sentence. So we have a very disproportionate sentence. And not only is it, and I think a lot of times people say, well, 25 to life, so 25, that's it. But that's not it. Twenty-five is the minimum, and it's the minimum without any chance of probation, without any chance of parole. And that's where we have the problem. And that goes to the first factor. With the possibility of a pardon or remission by the governor, however, right? Right, correct. Correct. And that's the first aspect of looking at whether the sentence is grossly disproportionate. And I'm into my two minutes rebuttal time, and the other factors are listed in my brief. May I reserve my last two minutes? Sure. Thank you. Good morning. May it please the Court. My name is Alan Amon, and I represent the State of Arizona. This case is not one of those exceedingly rare cases or potential extraordinary circumstances that warrant habeas relief. I think the overall characteristics of this case draw upon the factual elements that were found to support the sentences in both Rommel and Harmelin. The petitioner in this case is a recidivist. This is his third felony that he committed, and he committed it while he was on probation. Rommel upheld a sentence of 12 to life for a nonviolent recidivist, a three-time nonviolent recidivist. And this petitioner is not just a recidivist, but he's also a dangerous offender. Harmelin upheld a life sentence without the possibility of parole for an offense that he deems to be serious. The offense was possession of 1.5 pounds of cocaine. And it was a serious offense because of the possibility of violent consequences down the road associated with the drug trade. Here we don't have just the possibility of violent consequences. Excuse me. This was a violent ‑‑ this was violent conduct. Let me ask you a question, counsel. What would the sentence have been without the sentencing enhancement? Opposing counsel made the comment it was 10 to 20 years. That's a big swing. Do you know what it would have been? I'm sorry. You mean without the prior conviction? Correct. If it was a first time offense, the maximum he could have received was seven years. Seven years for the aggravated assault? For a first time aggravated assault, yes. But if he was a ‑‑ That was the maximum sentence, yes? That would have been the maximum sentence. An aggravated assault is a class 3 felony in Arizona which warrants a 3.5 year presumptive sentence or a seven year maximum sentence based on the existence of aggravating factor. It's a huge increase to go from that to life based on the prior two offenses. Well, for a first time offense, a maximum of seven years. But with two prior felony convictions, then the sentence goes up to 10 to 20 years. So I submit that the relevant comparison would be the maximum of 20 years because he does have the prior conviction. And so the maximum of 20 is the relevant comparison that we compare the 25 years to, the minimum of 25 years that he received here. And so what was the enhancement that changed it to life here? It was the fact that he committed a serious offense while he was on probation on the two prior felony offenses. And the whole comparative thing to the other statutes, what he could have received, it doesn't really come into play in this picture because there's no inference of gross disproportionality here. The inference, you find an inference by comparing the fact of this case to the fact in the five Supreme Court cases that deal with gross disproportionality analysis of Rommel, Harmelin, Solem, Andrade, and Ewing. And it's entirely reasonable for the state court in this case to conclude that this case contains a mix of relevant factors in those cases and put them together and say that the end result, it is not constitutionally grossly, it's not grossly disproportionate. One thing here is the state court could reasonably distinguish this case from Solem on a number of grounds, one of which is that the defendant here had the possibility to parole after 25 years, while in Solem it was a life term without parole. In Andrade, the defendant had the possibility to parole after 25 years, and the Supreme Court found that to be a distinguishing factor. So it's entirely reasonable for the Arizona Court of Appeals to conclude that Solem doesn't apply because of the eligibility for parole after 25 years. And, again, this is a serious offense. It's a dangerous offense. The Arizona Court of Appeals recognized that it could have been no more than sheer luck or fortuity that his conduct did not result in maiming or killing somebody else. And there was not just one victim here, but two victims. He tried to run over somebody, and then he held on to another security officer's arm and tried to side swipe him against a wall, which, of course, could have resulted in serious injury or death. And the facts show that the other officer was freed only because the other security officer got up and actually shot the petitioner and hit him in the chest, and that's why he let him go and that's why he got away safely.  And he's also, and again, he's also a recidivist. This is his third felony offense, and as the exhibit, the supplemental exhibit to the record show, he also had a juvenile criminal history as well. And there was an escalation from the prior felonies were for possession of marijuana and for death. It's not the intent of the State of Arizona to add any time just because there were juvenile offenses is that you don't take the juvenile offenses into account in this sentencing at all, right? No, no. Why do you bring it up? Well, because in Andrade, they looked at the, they don't look at the bare minimum number of felonies necessary to justify the sentence. Under the relevant statute, they look at his overall criminal history. And so I submit that under that rationale, we look at the overall criminal history of the petitioner here. And there's an escalating, the seriousness or level of violence has escalated from death and possession of marijuana to here we have driving a stolen vehicle for which he was convicted of death as well. We have endangerment, and we have a aggravated assault with a deadly weapon, which was the automobile. If we are to take into account the juvenile history, aren't we defeating the very purpose of the legislature in establishing a juvenile court, which is not a court of record? Well, that is a concern. I acknowledge that. that said juvenile offenders is a sole or partial justification for an extraordinary sentence. It's the felony conduct. It's the status of the defendant on parole for felonies that results in this extended period of time. And that's all. Okay. I understand that, Your Honor. Am I wrong? No, no. However, I would like to point out that in Rummel, which involved a nonviolent recidivist, they said that the fact of the prior conviction and incarceration was what, quote, unquote, graphically informed the defendant of the consequences of unlawful conduct. And here, you know, that criminal history was sufficient to graphically inform the petitioner of the consequences of unlawful conduct. And yet, he's still engaged in the dangerous violent conduct that's at issue here anyway. What was the prior theft? Was it a DVD? I'm sorry. I'm sorry. I don't have that information. I apologize for that. And the last thing I'd like to point out is that the fact that he was on probation at the time of the offenses here is a factor that amplifies the seriousness of the offense that the Court of Appeals recognized. He was on probation merely, I mean, by a matter of legislative grace. And for him to take advantage of that opportunity to reform and commit the offenses while on probation, it really does undermine the whole purpose of probation, and it undermines the integrity of the probation program. And so I think the Arizona Supreme Court, I believe, has recognized the legitimate purpose behind the statute pursuant to which the petitioner was sentenced. Why was the marijuana possession offense a felony? I believe that ‑‑ I'm not too sure. I believe that that kind of offense is discretionarily chargeable as either a felony or a misdemeanor. I may be mistaken on that. Does it depend upon quantity? I'm not sure. Does it depend upon quantity? I believe so. The last thing I would like ‑‑ one thing I would like to point out in the time I have left is that the petitioner contends that the prosecutor gave him, offered him a plea agreement, which had a substantially lesser sentence. I submit that that does not really calculate into an Eighth Amendment analysis for a number of reasons. The issue of prosecutorial discretion is a separate analysis from Eighth Amendment analysis. We look at the sentence that he actually received, and we look at the facts underlying the offense here and compare them to the Supreme Court cases. Okay. My time is up. Thank you very much. Thank you. Thank you. I'm not saying that what Mr. Kenyatta was convicted on was not serious, but he's been in for 15 years for this. And the Arizona Court of Appeals failed to identify the gross proportionality issue by failing to apply Rommel and Sommel. The Court only looked to Harmelin, which was the case involving the massive quantities of cocaine, which did not involve a recidivist statute. The prior convictions that Mr. Kenyatta received were not serious under the Arizona statute. They're serious ones and not serious. The prior convictions were not in there. As part of his pre-sentence report, his juvenile convictions were mentioned, and arrests that did not result in convictions, just arrests of dismissed charges, were included in the pre-sentence report as well. I think also very telling is the comments from the trial court judge who said, My hands are tied. I wish the prosecutor wasn't going to go forward with this statute. I don't believe this man deserves a life sentence, but my hands are tied. And we ask the court to reverse his sentence. I have 30 seconds if there's any more questions. Thank you very much. Thank you. I'd like to thank both counsel and the appointed translator in facilitating the court's understanding of this case. Thank you, sir. You may stand for a minute.
judges: Beezer, Kozinski, Carney